UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGELICA MARIA QUINTANA ZAPATA, et al.,

     Petitioner(s),

  v.

JULIO HERNANDEZ, et al.,

     Respondent(s).

CASE NO. C26-1214-KKE

ORDER GRANTING HABEAS PETITION

Seven women were arrested and detained by United States Immigration and Customs Enforcement ("ICE") agents in Baltimore in March 2026 while attending scheduled ICE check-in appointments, and are now detained at the Northwest ICE Processing Center in Tacoma, Washington. They filed a joint petition for writ of habeas corpus under 28 U.SC. § 2241. Dkt. No. 16. The petition argues that their detentions are unlawful because they violate their constitutional right to procedural due process. *Id*. at 24–25. The Court agrees and will therefore grant the petition and order Petitioners' immediate release.

ORDER GRANTING HABEAS PETITION - 1

## I.    BACKGROUND

Petitioners entered the United States between 2019 and 2024, were thereafter detained by the Government,[1] and then issued notices to appear[2] and released with conditions.  *See* Dkt. No. 2 ¶ 5; Dkt. No. 3 ¶¶ 5, 7; Dkt. No. 4 ¶ 7; Dkt. No. 5 ¶¶ 5, 7; Dkt. No. 6 ¶¶ 5, 7, 8; Dkt. No. 7 ¶ 6; Dkt. No. 8 ¶ 6; Dkt. No. 31-1 at 2–3; Dkt. No. 31-2 at 3–4; Dkt. No. 31-3 at 2–3; Dkt. No. 31-4 at 3; Dkt. No. 31-8 at 3; Dkt. No. 31-10 at 2; Dkt. No. 31-11 at 3; Dkt. No. 31-14 at 2; Dkt. No. 31-15 at 3; Dkt. No. 31-16 at 2; Dkt. No. 31-17 at 3; Dkt. No. 31-18 at 2; Dkt. No. 31-19 at 3–4. Petitioners enrolled in the Government's Alternatives to Detention ("ATD") program, which required Petitioners to appear periodically for check-ins at an ICE field office, and which they all did in February or March 2026.  *Id.*  At those check-in appointments, Petitioners were arrested for alleged ATD violations and have remained detained since then.  *Id.*  Since the time that Petitioners were arrested, some of them have been ordered removed or ordered to voluntarily depart, although it does not appear that any Petitioner has an administratively final order of removal.  *See* Dkt. No. 33 at 1–3.

Petitioners filed a joint petition for a writ of habeas corpus requesting immediate release from detention and thereafter amended their petition.  Dkt. Nos. 1, 16.  For the following reasons, the Court grants the habeas petition.

## II.    ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28

---

[1] This order refers to the federal Respondents—ICE's Seattle Field Officer Director of Enforcement and Removal Operations Julio Hernandez, U.S. Department of Homeland Security ("DHS"), DHS Secretary Markwayne Mullin, and Acting Attorney General of the United States Todd Blanche—individually or collectively as "the Government."

[2] Two of the Petitioners' initial notice to appear were dismissed for failure to prosecute, and then recently re-issued after their re-detention.  *See* Dkt. No. 30 ¶¶ 7, 16, 32, 34.  Another two Petitioners' initial notice to appear was never properly filed, and thus never commenced.  *See id.* ¶¶ 40, 57.

ORDER GRANTING HABEAS PETITION - 2

U.S.C. § 2241(c)(3).  In this case, Petitioners contend that their arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context."  53 F.4th 1189, 1206–07 (9th Cir. 2022).  Petitioners and the Government both apply the *Mathews* test here (Dkt. No. 29 at 13–14, Dkt. No. 32 at 7–12), and the Court will consider each *Mathews* factor in turn to determine whether Petitioners' re-detention comports with constitutional due process requirements.

ORDER GRANTING HABEAS PETITION - 3

**A.    Each Petitioner is Detained Under 8 U.S.C. § 1226(a).**

To determine whether each Petitioner's detention complies with due process, the Court must first determine the statutory authority governing each Petitioner's detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

The Government treats Petitioner Mirna Yesenia Alvarado Benitez differently than the remaining Petitioners, and the Court will address her status first. The Government acknowledges that Alvarado Benitez was previously placed in standard removal proceedings under 8 U.S.C. § 1229a, but argues that because those removal proceedings were dismissed for failure to prosecute, she is now properly subject to mandatory detention under 8 U.S.C. § 1225(b)(1) in the expedited removal proceedings that the Government initiated after she was detained in March 2026. Dkt. No. 29 at 8–10. The Court previously explained why it finds this argument unpersuasive, in granting Alvarado Benitez's motion for a temporary restraining order. Dkt. No. 28 (citing *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 936 (E.D. Cal. 2025) ("The government cannot switch tracks and subject Petitioner to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioner in removal proceedings under section 1229a and released him on his own recognizance under section 1226(a)." (citation modified)); *N.Y.V.D. v. Santacruz*, No. 5:25-cv-03404-WLH-SP, 2025 WL 3786964, at *4 (C.D. Cal. Dec. 23, 2025) (following cases holding that "a noncitizen who is not an arriving noncitizen and who was initially released on his or her own recognizance cannot subsequently be designated for expedited removal"); *Leiva Flores v. Albarran*, No. 25-cv-09302-AMO, 2025 WL 3228306, at *4 (N.D. Cal. Nov. 19, 2025)). The Government has not shown that the fact that Alvarado Benitez's prior § 1229a proceedings were dismissed for failure to prosecute provides a meaningful distinction from the authority cited in the

Court's prior order. Instead, the Court here confirms its agreement with Alvarado Benitez that the Government may not rely on its "own inaction in failing to prosecute [her] § 1229a proceedings to justify placing her in expedited removal and depriving her of important procedural protections that [it] initially decided were appropriate." Dkt. No. 32 at 5. Thus, the Court rejects the Government's position that Alvarado Benitez is subject to mandatory detention under Section 1225(b)(1), and finds instead that she is detained under 8 U.S.C. § 1226(a).

The Court now turns to consider Petitioners other than Alvarado Benitez: the Government argues that these Petitioners fall within the mandatory detention scheme under Section 1225(b)(2) as applicants for admission to the United States. Dkt. No. 29 at 8–12. The Court reiterates its agreement with other courts that reject an expansion of the scope of mandatory detention under Section 1225(b)(2) to include these Petitioners. Petitioners' status as people previously released with conditions, and who have been living in this country for years, counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g., Da Cunha v. Freden*, No. 25-3141-pr (2d Cir. Apr. 28, 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States

ORDER GRANTING HABEAS PETITION - 5

for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). The Government's interpretation of Section 1225(b)(2) is unpersuasive when the statutory scheme is read as a whole, when this subsection is read in conjunction with its implementing regulations, and when the subsection is read against the backdrop of shifting agency pronouncements. *See, e.g., Llanes Tellez v. Bondi*, __ F. Supp. 3d __, 2025 WL 3677937, at *6–8 (N.D. Cal. Dec. 18, 2025). Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that the remaining Petitioners fall outside the mandatory detention scheme of Section 1225(b) and are instead detained under Section 1226(a).

## B.    Petitioners Have a Protected Interest in Their Liberty.

Petitioners' interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioners were arrested during routine appointments, transferred to a facility in a different state, and remain detained months later undoubtedly deprives them of an established interest in their liberty.

The Government contends that Petitioners' liberty interest "is substantially limited by their status as inadmissible aliens who entered without inspection and possess no constitutional right to remain in the United States." Dkt. No. 29 at 13. The Court disagrees, finding that Petitioners' liberty interests are sufficiently robust to be constitutionally protected. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Thus, the first *Mathews* factor favors Petitioners.

ORDER GRANTING HABEAS PETITION - 6

**C.      The Risk of Erroneous Deprivation of Liberty is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioners that the risk of erroneous deprivation in the absence of a pre-detention hearing is high.

The Government argues that the risk of erroneous deprivation is low because "each Petitioner's [ATD] violations were objective, repeated, and documented; each was arrested pursuant to a warrant; and each received a custody redetermination notice with the opportunity to contest continued detention." Dkt. No. 29 at 13. None of these contentions is supported with evidence: the record does not contain "objective" documentation of the ATD violations, arrest warrants, or custody redetermination notices. The Court finds no reason to assume the accuracy of the Government's generalized description of records that may or may not exist, particularly because it appears to be undisputed that no Petitioner received notice or an opportunity to be heard on her alleged ATD violations before she was re-detained. The absence of pre-deprivation procedural safeguards leads to a high risk of an erroneous deprivation of Petitioners' liberty. Accordingly, the Court finds that the second *Mathews* factor favors Petitioners. *See Doe*, 787 F. Supp. 3d at 1094.

**D.      The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioners without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would require the expenditure of finite resources (money and time) to provide Petitioners notice and a hearing on alleged ATD violations before arresting and re-detaining them, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal.

ORDER GRANTING HABEAS PETITION - 7

Case 2:26-cv-01214-KKE   Document 34   Filed 05/06/26   Page 8 of 9

2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The Government argues that it has "compelling" "countervailing interests of enforcing mandatory detention under 8 U.S.C. § 1225(b), ensuring appearance at removal proceedings, and maintaining the integrity of the ATD program[.]" Dkt. No. 29 at 13. Setting aside the Court's disagreement as to whether Petitioners are subject to mandatory detention, the Government's stated interests are not threatened if a pre-deprivation hearing is required. That Petitioners' alleged violations occurred months or even years before they were acted upon undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.

For these reasons, the Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is minimal: any administrative or financial burdens in providing a pre-deprivation hearing to Petitioners are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. The third and final *Mathews* factor favors Petitioners.

As the Court's review of the *Mathews* factors suggests, Petitioners' current detention does not comport with due process.

### III.   REMEDY

Having determined that each Petitioner's detention violates her constitutional right to due process, the Court finds each Petitioner's detention to be unlawful and will grant the joint habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.*

ORDER GRANTING HABEAS PETITION - 8

(quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioners' unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

Furthermore, as explained in this order, due process requires that Petitioners receive notice and an opportunity to be heard before they may be re-detained for alleged ATD violations. *See, e.g.*, *Llanes Tellez*, __ F. Supp. 3d __, 2025 WL 3677937, at *9 ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future hearing for this purpose, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

### IV.    CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 16. The Court ORDERS that each Petitioner shall be released from custody no later than May 7, 2026, on reasonable conditions. The Government shall file a status report no later than May 8, 2026, to confirm each Petitioner's release in compliance with this order. The Court will consider any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 6th day of May, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING HABEAS PETITION - 9